# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | : |
| | : |
| v. | : Criminal No. 1:19-cr-47 (RBW) |
| | : |
| **CHAO CHARLES ZHOU,** | : |
| | : |
| **Defendant.** | : |

## STATEMENT OF OFFENSE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, CHAO CHARLES ZHOU (hereinafter, "ZHOU"), agree and stipulate to the facts presented below. These facts are presented for the purpose of demonstrating there is a factual basis for ZHOU's guilty plea pursuant to Federal Rule of Criminal Procedure 11, and do not represent all of the evidence that could have been presented at a trial.

1.    At all times relevant to this Statement of Offense, ZHOU held a partial or full ownership interest in business entities that operated bars, restaurants, and nightclubs in the District of Columbia, including but not limited to 1716 I LLC (hereinafter, "1716 I"), 1720 I LLC, (hereinafter, "1720 I"), Zhou Hospitality LLC (hereinafter "Zhou Hospitality"), and Zhou Hospitality Group LLC (hereinafter, "Zhou Hospitality Group").

2.    1716 I was a corporation registered with the District of Columbia Department of Consumer and Regulatory Affairs ("DCRA") and located at 1716 I Street, Northwest, Washington, D.C. It owned and operated Eden Lounge, a bar and lounge located at the same address. 1716 I was first registered in or about September 2013.

3.    1720 I was a corporation registered with the DCRA and located at 1720 I Street, Northwest, Washington, D.C. It owned and operated Café Asia, a restaurant and lounge located

at the same address. 1720 I was first registered in or about March 2010 and was dissolved in or about March 2017.

4.      Zhou Hospitality LLC was a corporation registered with the DCRA and located at 717 6th Street, Northwest, Washington, D.C. It owned and operated Muse Nightclub, a bar and lounge located at the same address. Zhou Hospitality was first registered in or about March 2008 and was dissolved in or about October 2013.

5.      Zhou Hospitality Group LLC was a corporation registered with the DCRA and located at 733 10th Street Northwest, Washington, D.C. It owned and operated Umaya, a restaurant located at the same address. Zhou Hospitality Group was first registered in or about September 2013.

6.      At all times relevant to this Statement of Offense, 1716 I, 1720 I, Zhou Hospitality, and Zhou Hospitality Group were subject to monthly sales and use tax requirements and annual corporate franchise tax requirements administered by the Office of Tax and Revenue (hereinafter, "OTR"), the agency of the District of Columbia government responsible for collecting taxes from individuals and businesses.

7.      In or about 2011, ZHOU began to fall behind in paying the monthly sales and use taxes for some of his entities. For instance, on or about November 2011, ZHOU attempted to arrange a payment plan by which to address 1720 I's mounting overdue tax liabilities.

8.      ZHOU's friend and business partner, Person A, introduced ZHOU to Person B, whom Person A said had connections within various departments of the D.C. Government and could work as an "expediter" for matters such as ZHOU's businesses' permits at DCRA.

9.      By in or around March 2012, 1716 I and 1720 I had amassed tens of thousands of dollars' worth in tax liabilities, and through Person A, ZHOU began to enlist Person B's

2

assistance in relieving these liabilities. Person A made clear to ZHOU that in order to get a Certificate of Clean Hands—a document issued by the D.C. Government establishing that a business is in good financial standing—Zhou would need to agree to Person A providing a cash bribe through Person B. ZHOU agreed.

10. Thereafter, beginning in or around July 2012, ZHOU engaged directly with Person B in a bribery scheme. ZHOU would give cash to Person B, knowing that the cash (minus Person B's cut) was being paid to an OTR employee for the purpose of influencing the OTR employee to improperly reduce or eliminate the tax liabilities of ZHOU's businesses.

11. Initially, ZHOU did not know the OTR employee whom his cash payments were being used to bribe. At some point, however, Person B introduced ZHOU to Public Official C and made known to ZHOU that Public Official C was the OTR employee who had been receiving ZHOU's bribe payments in exchange for taking acts to fraudulently reduce or eliminate ZHOU's businesses' tax liabilities. Although Person B remained his primary contact, ZHOU discussed the scheme directly with Public Official C in person and on the telephone on occasion.

12. Although ZHOU did not track or record the bribes he was paying to Public Official C through Person B, initially, Person B demanded, and ZHOU gave, bribes of about $1,000 approximately four times a year to assist in the fraudulent reduction or elimination of ZHOU's tax liabilities. Over time, Person B demanded, and ZHOU paid, increasingly large cash bribes.

13. In or around 2013, Zhou Hospitality's outstanding tax liabilities were also mounting, and precipitated ZHOU's brother's personal bankruptcy. In or around March 2014, ZHOU provided Person B with a cashier's check for a portion of Zhou Hospitality's outstanding

liabilities, as well as a cash bribe for Person C. Days after ZHOU paid the bribe, Person B provided Zhou with a Statement of Account for Zhou Hospitality dated March 13, 2014, and told ZHOU that ZHOU was "good." The Statement of Account included a balance box that had been crossed out and initialed with Person C's initials.

14. In or about April 2014, Person B informed ZHOU that Public Official C had determined that 1716 I and 1720 I were on OTR's non-compliance collections list and owed more than $30,000 in tax liabilities. Person B demanded, and ZHOU gave, approximately $5,000 in cash bribes to Public Official C in order to reduce 1716 I's and 1720 I's outstanding sales and use taxes, interest, and penalties. On or about April 25, 2014, Public Official C sent ZHOU an email stating, "Attached are the original statement of accounts before the adjustments." The email attached Statements of Account for 1716 I and 1720 I reflecting outstanding balances of $9,735.50 and $21,928.74, respectively. ZHOU understood the email to mean that Public Official C had made fraudulent adjustments to ZHOU's entities' liabilities in exchange for the cash payment that ZHOU had provided through Person B.

15. In or about April 2015, ZHOU gave Person B a cash payment of approximately $10,000 to induce Public Official C to take action to keep ZHOU's entities off of OTR's non-compliance list.

16. In or about September 2017, ZHOU asked Person B to talk to Public Official C about closing 1720 I's account within the OTR system, and about fraudulently reducing or eliminating the outstanding liabilities of 1716 I and Zhou Hospitality Group. Person B demanded, and ZHOU gave, approximately $7,000 in cash in two installments for the purpose of bribing Public Official C to take these actions. Person B told ZHOU that, as a result, he should not worry about his entities' outstanding liabilities because OTR's new electronic system would

not track them. Person B subsequently arranged a conference call with ZHOU and Public Official C, in which Public Official C demanded, and ZHOU gave, an additional $5,000 cash bribe for Public Official C's acts.

17. Between in or about July 2012 and in or about September 2017, ZHOU's businesses received approximately $1,000,000 in tax benefits as a result of the bribes paid by ZHOU to Public Official C in exchange for the fraudulent reduction or elimination of ZHOU's businesses' tax-related liabilities, not including subsequent penalties and interest.

JESSIE K. LIU<br>
UNITED STATES ATTORNEY<br>
D.C. Bar No. 415793

By: _____
EMILY A. MILLER
D.C. Bar No. 462077
Assistant United States Attorney
Fraud & Public Corruption Section
555 4th Street, N.W., 5th Floor
Washington, D.C. 20530
(202) 252-6988
Emily.Miller2@usdoj.gov

## Defendant's Acceptance

I have read this Statement of the Offense and carefully reviewed every part of it with my attorney. I am fully satisfied with the legal services provided by my attorney in connection with this Statement of the Offense and all matters relating to it. I fully understand this Statement of the Offense and voluntarily agree to it. No threats have been made to me, nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

2/26/19
Date

CHAO CHARLES ZHOU
Defendant

## Defense Counsel's Acknowledgment

I am Defendant CHAO CHARLES ZHOU's attorney. I have reviewed every part of this Statement of the Offense with him. It accurately and completely sets forth the Statement of the Offense agreed to by the defendant and the Office of the United States Attorney for the District of Columbia.

2/26/19
Date

DAVID BENOWITZ
Attorney for Defendant